**Oreste KIDDER and Thelma Kidder**

v.

**H & B MARINE, INC., et al.**

**Civ. A. Nos. 88–2892, 88–3636.**

United States District Court,
E.D. Louisiana.

March 23, 1990.

William Rutledge, Lafayette, La., for plaintiffs.

Jack M. Alltmont, New Orleans, La., for defendants.

BEER, District Judge.

Plaintiffs, Oreste and Thelma Kidder, assert that defendants violated the Comprehensive Omnibus Budget Reconciliation Act of 1985 ("COBRA"), Pub.L. No. 99–272, 100 Stat. 222 (1986) (codified at 29 U.S.C. 1161–68) (Supp. IV. 1986), by failing to provide them with COBRA continuation coverage under a group health plan.[1]

Rather than receiving COBRA continuation coverage, plaintiffs were provided with conversion to an individual plan after Mr. Kidder left his employment with defendant H & B Construction, Inc. ("HB Construction"). After Mrs. Kidder was subsequently hospitalized, plaintiffs received the maximum recovery under that individual policy. Plaintiffs now seek the differential between the medical insurance benefits they received under the individual conversion policy, and the benefits they would have received if they had continued coverage under the group plan. Plaintiffs also seek an award for attorneys fees, asserting that defendants violation of COBRA was deliberate.

Besides HB Construction, the principle defendants are Blue Cross and Blue Shield of Louisiana Multiple Employer Group Insurance Trust ("BC Trust"), of whom HB Construction was a participating employer; and Blue Cross and Blue Shield of Louisiana, the underwriter of HB Construction's group health plan ("Blue Cross").[2] HB Construction and Blue Cross filed cross-claims against one another.[3]

In order to prevail, plaintiffs must first show that COBRA applies to HB Construction's group health plan. Second, plaintiffs must prove who among the defendants violated a lawful duty under COBRA to advise them of their right to a continuation of group coverage, or to provide that coverage.

Trial in this matter was held on January 18, 1990. This court makes the following Findings of Fact and Conclusions of Law.

## FINDINGS OF FACT

1. Before the two companies merged in 1986, HB Construction and HB Marine were owned by the same four principles, who each owned 25% of each company. The two companies have had the same office manager since 1983. They had separate P.O. Boxes and separate telephone numbers, but they operated out of the same office and the same person answered the phone for each of them.

2. HB Marine conducts marine work on water, like pile-driving. HB Construction

---

1. COBRA in part amended the Employee Retirement Income Security Act ("ERISA"). 29 U.S.C. 1001 *et seq.* ERISA was designed to protect private sector employees from losing pension rights after long years of service. ERISA did not provide similar protection, however, for the health insurance benefits of workers and their dependents. COBRA was enacted to remedy this "dangerous vacuum" by providing the initial protection of allowing participation in employer provided health insurance group plans after the employee left his job under certain circumstances. David L. Gregory, *COBRA: Congress Provides Partial Protection Against Employer Termination of Retiree Health Insurance,* 24 San Diego L.Rev. 77, 80 (1987); *see also,* H.R.Rep. No. 99–241, 99th Cong., 1st Sess., pt. 1, 44 (1985), *reprinted in,* 1986 U.S.CODE CONG. & ADMIN.NEWS 42, 579, 622 (Committee ex-

pressed a general concern about the growing number of Americans who have no health insurance in enacting COBRA). Any employer who fails to comply with COBRA is denied a tax deduction for its expenses involved in providing the group health insurance.

2. Louisiana Health Service & Indemnity Company ("LHSIC"), which is a party to the BC Trust and a related entity to Blue Cross, is also a defendant. The insurance agents who sold HB Construction's group health policy were defendants, but were voluntarily dismissed by plaintiffs before trial.

3. BC Trust and LHSIC are named as defendants with Blue Cross in HB Construction's cross-claim, and joined Blue Cross in its cross-claim against HB Construction.

does work on land, like levy work and excavation.

3. It was the practice of HB Marine and HB Construction to exchange employees as work demands required. When a transfer was made, there was no change in the insurance benefits provided for the employee.

4. Plaintiff Oreste Kidder began working for HB Marine in 1983 as a dredge captain. Subsequently, he was transferred to the payroll of HB Construction, where he remained until his termination in 1987. The only changes that resulted in the transfer for Kidder was the color of his paycheck, and the company name on it. His job responsibilities were unchanged, and he had the same boss, Emmet Buras.

5. While there is some dispute over whether HB Construction employed on average 20 or more employees on a typical day in 1986, there is no dispute that HB Marine and HB Construction combined employed on average more than 20 employees on a typical business day in 1986.

6. HB Marine and HB Construction merged on June 30, 1986, principally for tax purposes.

7. On September 2, 1986, Emmet Buras, on behalf of HB Construction, signed a Participating Employer Application ("Application") with BC Trust, which became effective on September 1, 1986. HB Construction was the only employer listed on the Application. Buras indicated on the Application that HB Construction employed 19 people, 18 of which were to be enrolled in the group health plan.

8. Blue Cross underwrote the policy for HB Construction based upon this Application, as well as an employees' census that indicated that HB Construction employed 17 people.

9. At the time the Application was signed, neither BC Trust nor Blue Cross was informed of the merger that had recently occurred between HB Construction and HB Marine, or of the practice of exchanging employees between the two companies as work demands required.

10. Pursuant to HB Construction's Application, a Blue Cross and Blue Shield Multiple Employe Group Insurance Trust ("Trust Agreement") was subsequently executed by which HB Construction was accepted as a Participating Employer in BC Trust.

11. At no time after acceptance of HB Construction as a Participating Employer, did either BC Trust or Blue Cross give any information or instruction to HB Construction regarding COBRA and the conditions under which an employee can elect COBRA continuation coverage.

12. BC Trust subsequently received premium statements from HB Construction that showed that HB Construction had more than 20 employees, and Blue Cross via BC Trust accepted premiums for more than 20 employees in those instances.

13. Kidder was terminated from employment with HB Construction on February 13, 1987. Kidder was listed on HB Construction's payroll at the time of his termination. He was also listed as covered under HB Construction's group health plan monthly roll from the date the plan was purchased until February of 1987.

14. At the time of his termination, Kidder was informed by his boss at HB Construction, Emmet Buras, and the independent insurance agent who sold the policy to HB Construction, that he could not continue under the group plan.

15. Neither Kidder nor anyone at HB Construction contacted BC Trust or Blue Cross immediately prior to or following Kidder's termination to inquire whether he was eligible for COBRA continuation coverage.

16. Kidder's termination of Blue Cross group coverage was effective March 1, 1987. On the group plan roll for that month, which was submitted to BC Trust, Eva Bowers, office manager of HB Construction, struck through Kidder's name on the roll, and noted "cancelled" beside his name. No explanation was given by Bowers on the roll as to why Kidder was cancelled.

17. Kidder was provided with conversion coverage by Blue Cross effective March 1, 1987. His conversion application was prepared by HB Construction personnel.

18. Despite signing an application for a conversion policy, and statements to the contrary previously made by HB Construction personnel to him, Kidder believed at that time that he was still enrolled on the group plan. Kidder apparently got this impression from talking with Eva Bowers, who he testified told him that he was still under the group plan. Although Bowers refutes ever telling Kidder that he was still under the group plan after his termination, this court finds credible Kidder's testimony that his understanding was to the contrary.

19. Several months after Kidder was terminated from HB Construction, and obtained the conversion policy from Blue Cross, his wife, Thelma Kidder, was hospitalized, resulting in medical costs totalling over $25,000 for plaintiffs.

20. Kidder made a claim pursuant to his individual conversion policy, and Blue Cross paid to him $10,041.25, the highest payment Kidder's conversion policy required.

21. The parties stipulated before trial that if plaintiffs prevail, they would be entitled to receive $23,890.24, which represents the differential between plaintiffs' benefits under the individual policy, and their former group health plan.

## CONCLUSIONS OF LAW

*COBRA applies.*

Defendants contend that COBRA does not apply for two reasons, both of which are unpersuasive.

Blue Cross first contends that HB Construction's group health insurance purchase was not a "plan" subject to COBRA since HB Construction neither maintained nor controlled the plan. Rather, it made a "bare purchase" of insurance, and the trust was a mere conduit of premium payments.

*Taggert Corp. v. Life & Health Benefits Admin.,* 617 F.2d 1208, 1211 (5th Cir.1980), *cert. denied,* 450 U.S. 1030, 101 S.Ct. 1739, 68 L.Ed.2d 225 (1980); *see also, Clark v. Golden Rule Ins. Co.,* 737 F.Supp. 376 (W.D.La.1989) (employer who participated in multiple employer trust did not "establish or maintain" the health plan, and thus the plan was not governed under ERISA).

This contention must be rejected, based on the fact that HB Construction paid a portion of the premiums for its employees. COBRA defines a "group health plan" as:

> an *employee welfare benefit plan* providing medical care ... to participants or beneficiaries directly or through insurance, reimbursement, or otherwise.

29 U.S.C. 1167(1) (emphasis added). ERISA defines an "employee welfare benefit plan" as:

> any plan, fund or program ... established or *maintained by an employer* ... to the extent that such plan, fund or program was established or is maintained for the purpose of providing for its participants or their beneficiaries, *through the purchase of insurance or otherwise,* (A) medical, surgical, or hospital care or benefits, or benefits in the event of sickness, accident, disability, death or unemployment....

29 U.S.C. 1002(1) (emphasis added). The Department of Labor, which administers ERISA, has promulgated final regulations regarding what constitutes an "employee welfare benefit plan". Those regulations provide that for purposes of group health insurance, the term "employee welfare benefit plan" does not include group insurance where (1) *no contributions are made by the employer,* (2) participation in the program is voluntary, (3) the functions of the employer are limited to allowing the insurer to publicize the program and facilitate dues payment by payroll deductions, and (4) the employer receives no consideration in connection with the program. 25 C.F.R. 2510.3–1(j), p. 335 (1988) (emphasis added).[4]

---

**4.** While not necessarily binding on this court, it is noteworthy that the Department of the Treasury has similarly interpreted that purchasing group insurance falls within the Internal Reve-

Therefore, since HB Construction, as a participating employer, paid a percentage of the premiums, the plan constitutes an "employee welfare benefit plan" under ERISA, and thus, a "group health plan" under COBRA.

■ In addition, both Blue Cross and HB Construction contend that COBRA is inapplicable because the small employer exemption in subsection 601(b) of COBRA applies. 29 U.S.C. 1161(b). This contention is also rejected. The small employer exemption excludes from COBRA plans administered by employers who employed on average less than 20 employees on a typical business day during the preceding calendar year. *Id.* For the purposes of this exemption, each employer and other entities under common control are considered as a single employer. 26 U.S.C. 52(a)–(b); 52 Fed.Reg. at 22721. Since HB Construction and HB Marine were under common control, not to mention were virtually two halves to the same outfit, their combined average employees is the correct figure for purposes of the small employer exemption.[5] That combined number of average employees during the applicable year, 1986, is clearly over 20. If companies so closely related as HB Construction and HB Marine were not considered as a single entity, company ownership could be artificially divided to manufacture qualification for the small company exemption from COBRA.

### Respective duties of defendants under COBRA.

There is no dispute that the termination of Mr. Kidder from HB Construction constituted a "qualifying event" under COBRA, 29 U.S.C. 1163(2), and that Thelma Kidder was a "qualified beneficiary" under COBRA. *Id.* at 1167(3)(A)(i). Therefore, the remaining issue is who among the defendants had a lawful duty to notify plaintiffs of their rights under COBRA, or to provide continuation coverage.

nue Code's definition of "group health plan" found at 26 U.S.C. 162(i)(3). 52 Fed.Reg. 22715, 22720 (June 15, 1987) ("Income Tax; Continuation Coverage Requirements of Group Health Plans; Notice of Proposed Rulemaking").

■ COBRA places the burden on the "plan sponsor" to provide continuation coverage if elected. *Id.* at 1161(a). In addition, COBRA establishes a sequence of notification requirements for various parties to ensure that employees are apprised of their rights under COBRA. *Id.* at 1166. Concluding who under COBRA is liable requires determining both who was the "plan sponsor", and who among the defendants had a duty to give notice to plaintiffs of their rights under COBRA.

### A. HB Construction was the "plan sponsor".

COBRA requires that the "plan sponsor" of each group health plan provide continuation coverage if elected after a qualifying event. *Id.* at 1161(a). When the plan is established or maintained by two or more employers, the "plan sponsor" is the: association, committee, joint board of trustees, or similar group of representatives of the parties who establish or maintain the plan. *Id.* at 1002(16)(B)(iii). When the plan is established or maintained by a single employer, the employer is the "sponsor". *Id.* at 1002(16)(B)(i).

The Department of Treasury has interpreted that a multiple employer plan is considered a separate group health plan with respect to each participating employer. 52 Fed.Reg. at 22722; *see also, Krogh v. Chamberlain*, 708 F.Supp. 1235, 1238–39 (D.Utah 1989). Pursuant to that interpretation, subsection 3(16)(B)(i) of ERISA applies, and HB Construction was the sole maintainer of the plan. 29 U.S.C. 1002(16)(B)(i). Therefore, HB Construction was the "plan sponsor", who held the duty to provide COBRA continuation coverage to plaintiffs, which it failed to do.

### B. HB Construction, BC Trust, and Blue Cross had notification duties under COBRA.

Irrespective of the duties of the plan sponsor, COBRA also includes in section

**5.** Accordingly, we have not turned to a factual determination of the average number of employees of only HB Construction during 1986.

606 a sequence of notice requirements placed on various parties to ensure compliance. *Id.* at 1166. This sequence begins with the "group health plan", which must provide at the commencement of the plan written notice of COBRA continuation coverage rights to each covered employee and their spouse. *Id.* at 1166(a)(1).

This court is aware of no Congressional committee, administrative agency, or court that has addressed who specifically has the responsibility as the "group health plan" to make this initial notice pursuant to subsection 606(a)(1). *Id.*[6] This court also notes the awkward language involved in stating that a "plan" has a notification requirement.

Nevertheless, it does make sense to say that a party or parties to a plan have such a duty. In this case, all the defendants are parties to, or at least affiliated, with the plan provided through BC Trust. Analyzing COBRA in its totality, along with its legislative history, indicates that the major responsibility for compliance falls upon the employer. 29 U.S.C. 1161–68; 1986 U.S. CODE CONG. & ADMIN.NEWS at 42. After all, it is the employer who receives the tax deduction of compliance with CO-BRA. 52 Fed.Reg. at 22718. There is nothing in the language of COBRA or its legislative history, however, indicating that parties besides the employers to a trust established to provide group insurance, and the trust officers, are not also part of the "group health plan", and thus implicated under the notice requirement in subsection 606(a)(1). 29 U.S.C. 1166(a)(1). In fact, since subsection 606(a)(2) places specific notice requirements on the employer, it is logical to assume that subsection 606(a)(1) does not implicate only the employer. *Id.* at 1161(a)(1)–(2). Otherwise, Congress would have combined subsections 606(a)(1) and 606(a)(2) into one section regarding the employer. *Id.* Further, at least at the commencement of a plan, which subsection 606(a)(1) addresses, the trust officers and an affiliated underwriter are more informed regarding the insurance being provided than the employer. *Id.* at 1166(a)(1). Therefore, this court finds that the notification requirement of subsection 606(a)(1), which was unfilled in this matter, implicates not only the employer, HB Construction, but the other parties to the trust as well, namely, the trustee (on behalf of BC Trust) and Blue Cross. *Id.*

In the instant case, the duty of BC Trust and Blue Cross is mitigated somewhat by the fact that the information HB Construction provided in the census and Application indicated that the small employer exemption to COBRA applied. *See id.* at 1161(b). Nevertheless, BC Trust and Blue Cross are not completely immunized from liability under subsection 606(a)(1) since they soon thereafter received premium statements and premiums from HB Construction indicating that the small employer exemption no longer applied. *Id.* at 1166(a)(1).

Blue Cross concedes that it received these premium statements and premiums, but contends that it had no duty to respond by informing HB Construction and/or its covered employees about COBRA. Blue Cross officials testified that they would redetermine if COBRA applied to HB Construction's policy after an annual review of that policy, which is all it contends the law requires.

This court disagrees. At the point where premium statements indicated to BC Trust and Blue Cross that the small employer exemption no longer applied to HB Construction, at a minimum, BC Trust and Blue Cross had a duty, as members of the

---

**6.** Congress directed the Secretary of Labor to issue regulations indicating what notice will be adequate to satisfy subsection 606(a)(1). *Id.* To date, those regulations have not been promulgated. Presumably, they will address who constitutes the "group health plan". Pending promulgation of those regulations, the Congressional conference committee directed that "employers are required to operate in good faith compliance with a reasonable interpretation."

H.R.Rep. No. 453, 99th Cong., 1st Sess. 653 (1985). The same should apply to "group health plans".

The issue of adequacy of notice of COBRA rights was addressed in *Dehner v. Kansas City Southern Industries, Inc.,* 713 F.Supp. 1397 (D.Kan.1989). In *Dehner,* hand delivery of CO-BRA rights was ruled sufficient by the employer, who was both the plan sponsor and the plan administrator. *Id.* at 1398, 1400.

group health plan, to give HB Construction information regarding COBRA that could then be passed on to its employees. *Id.* Otherwise, employees like Mr. Kidder remain uninformed of their rights under COBRA until the annual review is conducted. Further, it misconstrues the structure of section 606 of COBRA, which distinguishes between the "employer" and the "group health plan", to conclude that the employer alone had the duty to inform its employees about COBRA when it lost the small employer exemption. *Id.* at 1166(a)(1)–(2). Since BC Trust and Blue Cross failed to inform at least HB Construction about COBRA when it lost the small employer exemption, they share liability with HB Construction for the failure to notify plaintiffs of their rights under COBRA at the commencement of the plan. *Id.* at 1166(a)(1).

The trustee of BC Trust, who was the administrator of the plan, also is potentially implicated under subsection 606(a)(4), which required that he notify plaintiffs of their COBRA rights after the qualifying event of Mr. Kidder's termination. *Id.* at 1166(a)(4). However, subsection 606(a)(2) first requires that the employer notify the administrator of the qualifying event within 30 days. *Id.* at 1166(a)(2). In this matter, HB Construction failed to give adequate notice to the trustee of BC Trust. Eva Bowers of HB Construction noted on the plan monthly roll that followed Kidder's termination that Kidder was "cancelled". From this notation alone, an administrator cannot be expected to understand that a qualifying event has occurred. Therefore, while HB Construction is implicated once again under subsection 606(a)(2), BC Trust and its officers are not implicated under subsection 606(a)(4). *Id.* at 1166(a)(2), (4).[7]

In conclusion, HB Construction is liable since (1) it was the plan sponsor, who failed to provide continuation coverage, (2) it

shared the duty of notice under subsection 606(a)(1) to plaintiffs as a member of the "group health plan", and (3) it failed to adequately notify the plan administrator of the qualifying event of Mr. Kidder's termination, as subsection 606(a)(2) requires. *Id.* at 1161(a), 1166(a)(1)–(2). BC Trust and Blue Cross are liable since they shared the duty of notice under subsection 606(a)(1) as members of the "group health plan". *Id.* at 1166(a)(1).

Accordingly, plaintiffs are entitled to recover the full amount that the parties stipulated to if they prevailed.

■ The remaining task, therefore, is to apportion plaintiffs' damages between HB Construction and Blue Cross (and BC Trust), who cross-claimed against one another. Since jurisdiction here is based on a federal question, this court first looks to the applicable federal law, namely COBRA and ERISA, to determine how damages should be apportioned. *Id.* at 1161–68, 1002 *et seq.*[8]

COBRA does not address whether damages should be comparative, or joint and severable. 29 U.S.C. at 1161–68. As stated previously, Congress' intent appears to have been to place the principle, but not complete responsibility for implementing COBRA on the employer. *Supra,* at p. 11. Thus, when both an employer and other parties are found liable under COBRA for denied insurance coverage, apportioning damages comparatively is arguably consistent with Congress' intended division of responsibilities for compliance with COBRA.

Turning to ERISA, it provides that a fiduciary is liable for another fiduciaries' breach of responsibility if (1) he participates knowingly in a breach, or (2) he enabled the other fiduciary to commit a breach. 29 U.S.C. at 1105(a). Assuming that HB Construction and BC Trust were both fiduciaries (a question not addressed at trial), there is no evidence indicating that

---

7. In a similar manner, the requirement that the covered employee notify the administrator of a qualifying event in subsection 606(a)(3) presupposes that the group health plan notified the employee of its rights under COBRA at the commencement of the plan, as subsection 606(a)(1) requires. *Id.* at 1166(a)(1), (3).

8. Absent the cross-claims, if this court were sitting as an *Erie* court, applying Louisiana law, it would normally find the defendants liable *in solido* in a matter like this. L.S.A.–C.C. arts. 2324, 1804.

either of them induced the other to breach its responsibilities under COBRA. Therefore, while this court is reluctant to rely upon a finding that defendants were fiduciaries, and that section 405 of ERISA is directly controlling, that section supports a finding that defendants are liable only for their own failures pursuant to COBRA. *Id.*

In sum, COBRA and ERISA give no conclusive guidance on how damages should be apportioned in this matter, although there is some support in each of those Acts for apportioning damages in a comparative fashion. Without conclusive guidance from the applicable law, the court also considers the facts in this matter, which clearly indicate that the most equitable resolution would be to apportion damages pursuant to each defendant's degree of responsibility.

HB Construction is implicated under COBRA as the plan sponsor, the employer, and as a member of the group health plan. *Id.* at 1161(a), 1166(a)(1)–(2); *supra*, at pp. 9–14. Its principals exchanged employees between HB Construction and HB Marine as work demands required, a practice they carried out at their own peril. Its officers failed to give adequate notice of the qualifying event of Mr. Kidder's termination to the plan administrator, and incorrectly informed Mr. Kidder that he could not continue on the group health plan. A single phone call to a Blue Cross official by HB Construction personnel at the time of Mr. Kidder's termination could have made this litigation unnecessary. Based on these facts, HB Construction is disproportionally more responsible than BC Trust and Blue Cross for plaintiffs' damages.

However, BC Trust and Blue Cross are also implicated as members of the group health plan under COBRA for the initial failure to inform plaintiffs of their rights afforded under COBRA. *Id.* at 1166(a)(1); *supra*, at pp. 10–14. It is true that HB Construction's Application for coverage misinformed BC Trust about the number of employees initially enrolled on the plan. From that misinformation, BC Trust and Blue Cross reasonably concluded when the policy was sold that the small employer exemption to COBRA applied. *See id.* at 1166(a)(b). Shortly thereafter, however, BC Trust and Blue Cross received premium statements and premiums from HB Construction which indicated that the small employer exemption to COBRA no longer applied to HB Construction. At that point, someone at either BC Trust or Blue Cross should have recognized this fact, and responded, as members of the group health plan, by sending information regarding COBRA to HB Construction, if not directly to its employees who were enrolled on the plan. *Id.* at 1166(a)(1). Blue Cross' contention that it did not have a duty to reclassify HB Construction's policy until an annual review is rejected. *Supra*, at 12–13. Accordingly, while their failure to comply with COBRA is not as great as that of HB Construction, BC Trust and Blue Cross' liability is not insignificant.

From weighing the defendants' relative responsibilities for plaintiffs' damages as described above, the court concludes that HB Construction is liable for 75% of those damages, while BC Trust and Blue Cross are liable for 25%.

*Plaintiffs' claim for attorneys fees is denied.*

▮ ERISA provides the court with discretion to award reasonable attorneys fees to either party. 29 U.S.C. at 1132(g). The factors considered in determining whether attorneys fees should be awarded include: (1) the degree of the opposing parties' culpability or bad faith, (2) the opposing parties' ability to pay, (3) the deterrence that will result, (4) whether the parties requesting attorneys fees sought to benefit all participants of an ERISA plan, and (5) the relative merit of the parties' positions. *Iron Workers Local No. 272 v. Bowen*, 624 F.2d 1255, 1266 (5th Cir.1980).

▮ Plaintiffs have failed to show that any of the above stated factors support their claim for attorneys fees. *Id.* Additionally, this court finds as a matter of fact and concludes as a matter of law that defendants did not act in bad faith. Indeed, they each attempted to address this dilem-

ma in a reasonable (albeit unsuccessful) manner.

Counsel for plaintiffs is directed to submit a judgment consistent with this opinion for the court's consideration.