James M. TINGLE, Sr., and Yvette Cecile Tingle

v.

## PACIFIC MUTUAL INSURANCE COMPANY.

Civ. A. No. 89–0912.

United States District Court, W.D. Louisiana, Lafayette–Opelousas Division.

Dec. 12, 1991.

**188**

Edward M. Leonard, Jr., Leonard & Hayes, Morgan City, LA, for plaintiffs James M. and Yvette Cecile Tingle.

Nicholas F. LaRocca, Jr., Lippman, Mahfouz, Martin & LaRocca, Morgan City, LA, for defendant Pacific Mut. Ins. Co.

Stephanie M. Lawrence and Jayne L. Friedland, McGlinchey Stafford Lang, New Orleans, LA, for intervenor-plaintiff Lafayette General Medical Center.

### FINDINGS OF FACT AND CONCLUSIONS OF LAW

PUTNAM, Senior District Judge.

The above entitled proceeding came before the court for trial on the merits on October 9, 1991 before the Hon. Richard J. Putnam. Present were Edward Leonard, attorney for plaintiffs, James M. Tingle, Sr. and Yvette Cecile Tingle; Nicholas LaRocca, Jr, attorney for defendant, Pacific Mutual Insurance Company ("Pacific Mutual"); and Stephanie Lawrence and Jayne Friedland, attorneys for intervenor, Lafayette General Medical Center ("LGMC").

At the conclusion of the trial, the court took the case under advisement. The court now enters the following findings of fact and conclusions of law:

### FINDINGS OF FACT

**I.**

On September 3, 1987 plaintiff, James Tingle, was employed by Coastal Tubular Services, Inc. in Morgan City, Louisiana. That company provided group health insurance for its employees and their dependents.

**II.**

On September 3, 1987, plaintiff was advised by his employer that the employees had to fill out application forms for a new insurance policy to be provided by Pacific Mutual Insurance Company. The application was distributed to the employees by an agent with the insurance brokerage firm of Bayley, Martin & Fay. The application form had been prepared by Pacific Mutual. Plaintiff was told to fill out and sign the form while at work; he was not advised that he could bring the form home to review with his wife or check his personal medical records. Plaintiff completed the application, signed it, and returned it to the agent. The policy became effective on September 15, 1987.

**III.**

Question 5(f) on the enrollment form asked if Mr. Tingle or any of his dependents ever "(a) had, (b) been advised by a physician that you had or (c) received advice or treatment for: Gout or disorder of bones, joints, back or spine, arthritis, neuritis, or rheumatism?". Although Mrs. Tingle had suffered from backaches in the past, Mr. Tingle answered this question in the negative, believing that his wife had nothing more than an occasional minor pulled muscle in her back. Mrs. Tingle took Margesic for her back pain on an as needed basis, not daily.

**IV.**

Question 5(c) on the enrollment form asked if Mr. Tingle or any of his dependents ever "(a) had, (b) been advised by a physician that you had or (c) received advice or treatment for: Stomach, gall bladder, intestinal, digestive, ulcers, liver or rectal disorder, any form of tuberculosis, diabetes, hernia? If diabetic, age of onset, how controlled?" Mr. Tingle's answer did not show that Mrs. Tingle had been diagnosed in February of 1987 by Dr. Walter Daniels with non-insulin dependent diabetes mellitis. Mr. Tingle did not know about this diagnosis. When this diagnosis was made, Mrs. Tingle understood that this diagnosis was of "borderline" diabetes only and that she was taking her daily medication (Micronase) to prevent the onset of diabetes. Mrs. Tingle communicated her belief that she was not diabetic to Mr. Tingle. Dr. Daniels never discussed his diagnosis with Mr. Tingle.

## V.

Mr. Tingle also incorrectly answered other questions on the enrollment form concerning his wife's prior and current physical disorders, medical treatment, and prescribed medication.

## VI.

On the enrollment form, Mr. Tingle reported his wife's weight as 250 pounds but she actually weighed 334 pounds.

## VII.

Plaintiff misrepresented the above facts concerning his wife's health on the enrollment form filled out by him on September 3, 1987. However, at the time plaintiff filled out the form, he believed he was giving correct answers to what he believed was being asked.

## VIII.

These misrepresentations were material since Pacific Mutual would not have issued the policy to Mrs. Tingle if the enrollment form had been correctly answered.

## IX.

Even though the above answers were false, plaintiff had no intent to deceive the insurance company concerning the answers to these questions and plaintiff filled out the application to the best of his knowledge under the circumstances.

## X.

Even though the group plan was not a guaranteed issue plan of benefits, plaintiff understood that this new insurance policy was to provide the same coverage for his family as the previous policy provided by his employer. Plaintiff did not know that pre-existing illnesses might be excluded or cause coverage to be denied. Neither his employer nor the independent agent reviewed the application with him or discussed the questions with him. The agent advised another employee, in plaintiff's presence, that only major health problems, such as prior surgeries, were to be disclosed. Plaintiff's testimony concerning these matters was uncontradicted.

## XI.

On April 29, 1988, Mrs. Tingle ruptured a disc in her back, which was a new injury separate and distinct from her prior back problems. On May 17, 1988, she underwent surgery at LGMC for this condition. Due to her diabetic condition, she suffered post surgical complications and was hospitalized twice after the surgery. The total amount of medical bills resulting from the surgery and complications is $71,300.28. Of this amount, $52,794.71 is owed to LGMC.

## XII.

Plaintiffs executed an assignment of health care benefits in favor of LGMC pursuant to which LGMC was assigned the right of direct payment of all medical benefits due to plaintiffs by their health care insurer.

## XIII.

After a claim for these medical bills was filed with Pacific Mutual by plaintiff and LGMC, the company refused to pay the claim and rescinded the policy for Mrs. Tingle, citing Mr. Tingle's failure to exercise reasonable care in completing the health care information portion of the enrollment form and material misrepresentations made therein.

## *CONCLUSIONS OF LAW*

## I.

The court has jurisdiction over the subject matter of this case pursuant to § 502(f) of the Employee Retirement Income Security Act of 1974 ("ERISA Act"), 29 U.S.C. § 1132(f) and 28 U.S.C. § 1331. The group health insurance plan issued to plaintiff's employer is a welfare benefit plan within the meaning of § 3(1) of the ERISA Act, 29 U.S.C. § 1002(1), being a plan established and maintained by an employer for the purpose of providing for its participants or their beneficiaries, through the purchase of insurance, medical, surgical or hospital care or

benefits, or benefits in the event of sickness or accident.

## II.

At the time of Mrs. Tingle's back injury and during her subsequent hospitalizations, plaintiffs were participants in the plan within the meaning of § 3(7) of the ERISA Act, 29 U.S.C. § 1002(7) and under the terms of the plan.

## III.

The claim submitted to Pacific Mutual in connection with Mrs. Tingle's back injury is for charges covered by the plan.

## IV.

■ The ERISA Act preempts any state law that relates to an employee benefit plan. § 514(a) of the ERISA Act, 29 U.S.C. § 1144(a). However, ERISA does not preempt any state law that regulates insurance. § 514(b)(2)(A) of the ERISA Act, 29 U.S.C. § 1144(b)(2)(A). LSA–R.S. 22:619 governs the effect of misrepresentations made by an insured in a written application for health insurance. Although this Louisiana statute relates to an employee benefit plan, by application of the factors cited in *Metropolitan Life Ins. Co. v. Massachusetts,* 471 U.S. 724, 105 S.Ct. 2380, 85 L.Ed.2d 728 (1985) and *Pilot Life Ins. Co. v. Dedeaux,* 481 U.S. 41, 107 S.Ct. 1549, 95 L.Ed.2d 39 (1987), it is also found to regulate insurance. Therefore, LSA–R.S. 22:619 and the jurisprudence interpreting this statute apply to this case and are not preempted by the provisions of the ERISA Act.

## V.

■ The Louisiana law cited above requires that in order for an insurer to deny coverage and avoid payment of life or health insurance proceeds for a policy applied for in writing, the company must prove that the insured made a false statement, the false statement was made with the intent to deceive, *and* the false statement materially affected either the acceptance of the risk or the hazard assumed by the company. *Johnson v. Occidental Life Ins. Co. of California,* 368 So.2d 1032 (La.1979); *Coleman v. Occidental Life Ins. Co. of North Carolina,* 418 So.2d 645 (La.1982).

## VI.

■ Strict proof of fraud is not required to show an intent to deceive; it is to be determined from the attending circumstances indicating the insured's knowledge of the falsity and his recognition of the materiality of the false statement, or from circumstances which create a reasonable assumption that the insured recognized the materiality. *Coleman v. Occidental Life Ins. Co. of North Carolina,* supra; *Henry v. State Farm Mutual Auto. Ins. Co.,* 465 So.2d 276 (La.App. 3rd Cir. 1985); *Jamshidi v. Shelter Mutual Insurance Co.,* 471 So.2d 1141 (La.App. 3rd Cir. 1985).

## VII.

■ A misrepresentation is material if knowledge of the fact would have influenced the insurer in determining whether to assume the risk and issue the policy, or in fixing the premium. *Henry v. State Farm Mutual Auto. Ins. Co.,* supra. The misrepresentations made by Mr. Tingle were material, but were not made with an intent to deceive, as pointed out above.

## VIII.

Pacific Mutual has not met its burden of proof in this case and was therefore not entitled to deny the payment of benefits due and rescind coverage for Mrs. Tingle.

## IX.

Accordingly, plaintiffs are entitled to recover the sum of $71,300.28 representing their medical expenses in connection with Mrs. Tingle's back injury. As assignee of benefits due under the plan and pursuant to § 502(a)(1)(B) of the ERISA Act, 29 U.S.C. § 1132(a)(1)(B), LGMC is entitled to recover from Pacific Mutual a portion of the above award, being the amount of $52,794.71, which is the amount of its charges related to Mrs. Tingle's back injury.

X.

LSA–R.S. 22:657 provides for penalties and attorneys fees for claims arising under health insurance policies. However, this statute is preempted under the provisions of the ERISA Act. *Cramer v. Association Life Insurance Co.,* 569 So.2d 533 (La. 1990); *Rasmussen v. Metropolitan Life Insurance Co.,* 675 F.Supp. 1497 (W.D.La. 1987).

XI.

In an action under the civil enforcement provisions of the ERISA Act, an award of exemplary damages is not allowed. *Pilot Life Insurance Co. v. Dedeaux,* supra.

XII.

In an action by a plan participant under the civil enforcement provisions of the ERISA Act, the court in its discretion may allow an award of attorneys fees and costs of the action. 29 U.S.C. § 1132(g)(1), *Pilot Life Insurance Co. v. Dedeaux,* supra. In deciding whether to award attorneys fees in a case under the ERISA Act the court can consider the offending party's bad faith or culpability, the offending party's ability to pay the fees, the deterrent effect such an award would have on the offending parties, whether the parties requesting attorney fees sought to benefit all participants of the plan or to resolve a significant legal question regarding ERISA itself, and the relative merits of the parties' positions. *Iron Workers Local No. 272 v. Bowen,* 624 F.2d 1255 (5th Cir.1980); *Kidder v. H & B Marine, Inc.,* 734 F.Supp. 724 (E.D.La.1990). The court does not believe an award of attorneys fees is justified in this case and plaintiffs' claim for said fees is denied. Costs shall be awarded to plaintiff.

XIII.

Plaintiffs and Intervenor LGMC shall prepare a formal Judgment in accordance with these findings, which Judgment shall be entered after the court's signature thereon.