**Ronald J. MARTINEZ, Plaintiff,**

v.

**DODGE PRINTING CENTERS, INC., a Colorado corporation, Defendant.**

**Civ. A. No. 89–K–1711.**

United States District Court, D. Colorado.

Jan. 9, 1991.

Timothy J. Parsons, David B. Seserman, Denver, Colo., for plaintiff.

Mark S. Bove, Denver, Colo., for defendant.

## MEMORANDUM OPINION AND ORDER

KANE, Senior District Judge.

This action is brought under the civil enforcement provisions of the Employee Retirement Income Security Act of 1974 (ERISA), 29 U.S.C. § 1132(c)(1). The sole issue is whether the defendant, Dodge Printing Centers, Inc., is liable to the plaintiff, Ronald Martinez, for failing to notify Martinez of his right to continued coverage under the company's health insurance plan as required by the Consolidated Omnibus Budget Reconciliation Act (COBRA), 29 U.S.C. §§ 1161–68. Dodge Printing argues that it is exempt from COBRA's notifica-

tion requirements under the small employer exception for businesses employing fewer than 20 persons. *See id.* § 1161(b). It has moved for summary judgment on this basis and has requested attorney fees under 29 U.S.C. § 1132(g)(1) and 28 U.S.C. § 1927. I grant the motion for summary judgment, but deny the request for attorney fees.

## I. *Facts.*

The facts of this case are straightforward and, for present purposes, undisputed. Dodge Printing is a Colorado corporation formerly doing business in downtown Denver. Financial difficulties led it to file for bankruptcy on January 22, 1987. Although its bankruptcy petition was later dismissed, Dodge Printing reduced its staff. Martinez was terminated from his position on May 3, 1988. The company closed in May of the following year and is currently undergoing a voluntary liquidation.

Martinez commenced this action on October 2, 1989. He claimed that Dodge Printing was liable for civil penalties under ERISA for failing to comply with COBRA's notification requirements and for damages in the amount of his medical expenses which would have been covered under the company's health plan. Dodge Printing answered and moved for summary judgment, asserting that it was not required to comply with these provisions because it qualified for the small employer exception to COBRA. To support its motion, Dodge Printing supplied copies of printouts from the company's computerized payroll accounting system and other records showing that, on average, it employed fewer than 20 people in 1987, the year preceding Martinez' termination. Dodge Printing also requested attorneys fees, claiming that it has been clear from the outset of this case that it has met the small employer exception. Martinez disputes the method by which Dodge Printing arrived at its figures for the average number of persons employed in 1987 and denies that an award of attorney fees is proper.

## II. *The Small Employer Exception.*

Under COBRA, the sponsor of a group health plan must provide "that each qualified beneficiary who would lose coverage under the plan as a result of a qualifying event [be] entitled, under the plan, to elect, within the election period, continuation coverage under the plan." 29 U.S.C. § 1161(a). To comply with this section, an employer must ensure that each employee enrolling in its health plan receive written notice of his right to continued coverage. *Id.* § 1166(a)(1). Thereafter, when a qualifying event occurs, the employer, through the plan administrator, must notify the employee of his right to continue benefits under the health plan. *See id.* § 1166(a)(4). A qualifying event includes "[t]he termination (other than by reason of such employee's gross misconduct), or reduction of hours, of the covered employee's employment." *Id.* § 1163(a)(2). These provisions do not apply, however, "to any group health plan for any calendar year if all employers maintaining such plan normally employed fewer than 20 employees on a typical business day during the preceding calendar year." *Id.* § 1161(b).

There is little guidance from Congress, the administrative agencies or the courts on precisely how to determine whether a business "normally employed fewer than 20 employees on a typical business day" in order to qualify for the small employer exception. In the two reported cases in which the exception is mentioned, *Kidder v. H & B Marine, Inc.,* 734 F.Supp. 724 (E.D.La.1990), and *Krogh v. Chamberlain,* 708 F.Supp. 1235 (D.Utah 1989), the methodology to determine average number of employees is not addressed. In *Kidder,* the court found that two corporations were under common control and thereby treated them as one entity for the purposes of COBRA. Once aggregated, these companies clearly employed more than 20 persons and were not eligible for the small employer exception. Hence, the court made no findings as to average number of employees. *See* 734 F.Supp. at 729 & n. 5. *Krogh v. Chamberlain* involved a plaintiff who, having reached a settlement with her former employer on her ERISA claim, sought

attorney fees. In *Krogh,* for the purpose of determining whether the employer's position in the litigation was in good faith, the court noted that the employer may have been eligible for the small employer exception. Again, the court did not address how average number of employees is determined or whether the employer actually qualified for the exception. *See* 708 F.Supp. at 1239, 1240.

The sole authority on this subject is contained in proposed regulations promulgated by the Internal Revenue Service. *See* 52 Fed.Reg. 22715–22732 (1987) (to be codified at 26 C.F.R. pt. 1) (proposed June 15, 1987). The proposed regulations consist of a series of questions and answers relating to continuation coverage under COBRA. Question and answer 9 concerns the small employer exception. *Id.* at 22721. It states, "An employer is considered as having normally employed fewer that 20 employees during a particular calendar year if, and only if, it had fewer than 20 employees on at least 50 percent of its working days that year." *Id.* Dodge Printing has followed the formula described in the proposed regulations in calculating its eligibility for the small employer exception.

### III. *Dodge Printing's Eligibility for the Exception.*

The company bases its calculations primarily on the company's computerized payroll check registers covering each weekly pay period in 1987. These check registers identify by employee name and number each employee paid during that week, the amount of the payment, the check number and the date. Dodge Printing's president and sole shareholder, Richard Dodge, certified in his affidavit attached to the motion that these registers provide a complete and accurate accounting of all full and part-time employees of Dodge Printing in 1987, with one exception.[1] Dodge Printing also hired several part-time contract and temporary agency employees; these persons are accounted for in separate attachments containing the invoices from the contract labor service and printouts from the company's accounts payable system.

To arrive at the final calculation of average number of employees, Dodge Printing has combined the number of full-time, part-time, contract and temporary employees for each pay period. Since the above records were created on a weekly, and not daily, basis, Dodge Printing then attributed to each day in the pay period the *total* number of persons employed during that week. In other words, it assumed that all persons employed in a given week worked on each day of the pay period. It then determined the number of work days during 1987 in which it employed fewer than 20 persons and the number of days it employed 20 persons or more. These figures show that, of the 307 business days, including Saturdays, in which Dodge Printing operated in 1987, the company employed 20 or more persons on 33 days, and fewer than twenty persons on 274 days. As a result, on 89.25 percent of its regular business days, Dodge Printing employed fewer than 20 persons. Dodge Printing thus argues that it has met the small employer exception of employing fewer than 20 persons on a typical business day in 1987 and that it is entitled to summary judgment in this case.

◼ Martinez denies that summary judgment is proper and contests the accuracy of Dodge Printing's determination of average number of employees. He levels five specific criticisms to the above calculations. First, he argues that Dodge Printing should not have included Saturdays in its formula. Martinez claims that Saturday was not a "typical business day" because the number of employees working that day was normally lower than on other days. Martinez's argument overlooks the fact that Dodge Printing attributed the full number of employees paid during the week to each day, including Saturdays, in the pay period. Consequently, the calculations did not reflect that fewer employees normally worked on Saturdays, and the company's

---

1. A payroll register for the week ending November 8, 1987 was not available. To account for this omission, Dodge Printing assumed that it employed 20 persons on each business day of that week, even though in the surrounding weeks the average was generally lower.

inclusion of Saturdays into its calculations had no minimizing effect on the final tally of average number of employees.

Moreover, Martinez provides no reasoned basis for excluding Saturdays from the calculation of average number of employees. The statutory standard is average number of employees "on a typical business day." 29 U.S.C. § 1161(b). Dodge's affidavit confirms that "Dodge Printing Centers, Inc. was open for work six days per week, Monday through Saturday, although we normally had less than five employees working on each Saturday. All Sundays we were closed, and these were not business days." Dodge Affidavit at 2. Since Saturdays were regular work days, Dodge Printing justifiably included them in its calculations.

Martinez's second and third criticisms concern the omission of Richard Dodge from 30 payroll registers and his secretary, Kay Friedland, from 17. Martinez alleges that, as president and secretary of Dodge Printing, Dodge and Friedland must have been employed during time periods in which they were omitted. Dodge Printing responds that Dodge and Friedland were not shown on the registers for these periods because they did not receive compensation. Regardless, even assuming that both Dodge and Friedland worked on each of the six working days of omitted periods, there is little effect on the final result. Dodge Printing would still qualify for the exception because it employed fewer than 20 persons on 85.3 percent of its business days.

Fourth, Martinez notes Richard Dodge operated two affiliated corporations: Dodge Leasing Corporation and Dodge Graphics Corporation. Based on information in Dodge's affidavit and disclosures provided by Dodge Printing's attorney, Martinez argues that a total of four persons (two employees and two corporate officers) should be added to the payroll to account for the employees of these related entities. Martinez relies on *Kidder v. H. & B. Marine, Inc.*, 734 F.Supp. 724 (E.D.La. 1990). In *Kidder*, the court held "for the purposes of the [small employer] exemption, each employer and other entities under common control are considered as a single employer." *Id.* at 729. Martinez states in his exhibit calculating the average number of employees that "[i]nasmuch as the Defendant has refused to produce any records of these two corporations, it cannot be determined whether the corporate officers were also employees. Thus, for a conservative analysis, it is assumed that Dodge Leasing (2 employees, plus the 2 corporate officers) and Dodge Graphics (1 employee, plus the 2 corporate officers), had a total of 4 employees between them." Martinez Brief in Opposition to Motion for Summary Judgment [hereinafter Martinez Brief], Attachment 3 at 3.

Dodge Printing does not deny that Dodge Graphics and Dodge Leasing could be considered entities under Dodge Printing's common control. It argues instead that these two corporations employed no additional persons and to include them in the calculations would be double-counting. In his affidavit, Richard Dodge states that "[a]lthough two related corporations existed in 1987, Dodge Leasing Corporation and Dodge Graphics Corporation, these entities had no employees additional to those (2 persons) employed by Dodge Printing Centers, Inc. The president and corporate secretary were common to all three corporations."[2] Martinez's argument that four

---

2. Similar information was also provided in a letter, dated March 6, 1990, from Dodge Printing's counsel to Martinez's counsel. The letter explains:

   (a) Dodge Leasing Corporation received a corporate charter from the Secretary of State of Colorado on September 23, 1983, as a subchapter S corporation at 1240 14th Street and its sole purpose was to buy equipment and lease it back to Dodge Printing Centers, Inc. It had only two parttime employees and these same employees were employed fulltime by Dodge Printing Centers, Inc. Therefore, there were no additional employees. Dodge Leasing Corporation is in voluntary liquidation.

   (b) Dodge Graphics Corporation received a corporate charter from the Secretary of State of Colorado on June 17, 1987, at 1240 14th Street [sic] and it had only one parttime employee, Richard H. Dodge. It was formed as a non-bankruptcy entity to buy and lease one piece of equipment to Dodge Printing Centers,

persons should be added to each pay period because Dodge Printing failed to supply corporate records for the affiliated entities is unavailing. On a motion for summary judgment that is supported by affidavits or other papers, "an adverse party may not rest upon the mere allegations or denials of the adverse party's pleadings, but the adverse party's response, *by affidavits or as otherwise provided in this rule,* must set forth specific facts showing that there is a genuine issue for trial." Fed.R.Civ.P. 56(e). Alternatively, if the opposing party cannot for reasons stated in an affidavit present facts to justify his position, the court may grant that party additional time for discovery of the relevant information. *Id.* 56(f). Since Martinez has done neither here, his suggestion that Dodge Printing's figures understate the number of employees attributable to affiliated entities cannot be accepted.

█ Martinez's final argument on this motion is that the determination of eligibility for the small employer exception should be based on "the 'average' number of persons employed ... over a period of six months, which would encompass at least 50% of the working days in a year." Martinez Brief at 10. Under this formula, Martinez concludes that Dodge Printing employed on average 21.8 persons in the first six months of 1987.

There are several problems with this analysis. First, although, as noted, there is little direction on precisely how the small employer exception should be calculated, using average number of employees per month over a six-month period in the year preceding termination is less consistent with the statutory language than the formula adopted in the proposed regulations and followed by Dodge Printing. Section 1161(b) focuses on the number of employees "on a typical business *day* during the preceding calendar *year.*" By using a monthly calculation, Martinez artificially inflates the average number of employees. Likewise, looking at these figures over a

six-month period, instead of a one-year period, again has a skewing effect. The statutory language clearly indicates that Congress intended the exception to be determined by a one-year window, not a six-month window. Accordingly, there is little merit in Martinez's suggestion that his alternative formula "is more consistent with the terms and purpose of the statute." Martinez Brief at 6.

Martinez further claims that the formula in the proposed regulations should be given little weight, based on the Tenth Circuit's holding in *Oakley v. City of Longmont,* 890 F.2d 1128, 1133 (10th Cir.1989), *cert. denied* —— U.S. ——, 110 S.Ct. 1814, 108 L.Ed.2d 944 (1990). The issue in *Oakley,* however, was the date upon which continuation coverage terminated, not eligibility for the small employer exception. The *Oakley* court found the proposed regulations to be inconsistent with congressional intent and concluded that, "[u]ntil the agency completes formal rule-making and promulgates final regulations, the proposed rules, which the Internal Revenue Service has already deemed interpretive regulations, are unpersuasive." *Id.* at 1133.

Here, the formula to determine eligibility for the small employer exception provided in the regulations is a straightforward interpretation of the statutory language. Unlike Martinez's formula, it tracks the statutes' focus on daily number of employees over a one-year period preceding the qualifying event. In applying this formula, where there have been gaps or deficiencies in its records, Dodge Printing has interpreted the data in the light most favorable to Martinez. In that light, it is still clear that Dodge Printing employed fewer than 20 persons on a typical workday in 1987. There being no remaining material facts in dispute, Dodge Printing is entitled to judgment as a matter of law on its small employer defense. The motion for summary judgment is granted.

---

Inc. that Dodge needed in its reorganization. The rationale was that because it was a non-bankruptcy entity it would qualify for financing. The lease did not materialize. As a

result, Dodge Graphics Corporation did no business and its corporate charter will not be renewed upon renewal date.
Martinez Brief, Attachment 2.

## IV. *Attorney Fees.*

In addition to the motion for summary judgment, Dodge Printing has moved for attorney fees. ERISA provides, with certain exceptions, that the court, in its discretion, may award a reasonable attorney's fee and costs of action to either party in the case. *See* 29 U.S.C. § 1132(g)(1). In determining whether to award attorney fees under ERISA, the district court must consider the following factors:

(1) the degree of the opposing parties' culpability or bad faith; (2) the ability of the opposing parties to personally satisfy an award of attorney's fees; (3) whether an award of attorney's fees against the opposing parties would deter others from acting under similar circumstances; (4) whether the parties requesting fees sought to benefit all participants and beneficiaries of an ERISA plan or to resolve a significant legal question regarding ERISA; and (5) the relative merits of the parties' positions.

*Gordon v. United States Steel Corp.*, 724 F.2d 106, 109 (10th Cir.1983). Applying these factors to this case, an award of attorney fees under ERISA is not justified.

Looking at the figures provided by Dodge Printing, it was a fairly close question whether the company would qualify for the small employer exception. The final conclusion could be dependent upon the formula used to determine average number of employees, and this question was apparently one of first impression. Thus, under the first and fifth factors, there is little evidence that Martinez brought this suit in bad faith, nor was his position meritless. It follows that, under the third factor, there is little need for deterrence. *See Krogh*, 708 F.Supp. at 1240 (attorney fees rarely appropriate in cases dealing with issues of first impression). The fourth factor, benefit to other plan participants or resolution of a significant legal question, similarly does not weigh in favor of an award. Resolution of this case does not benefit other plan participants. While the proper calculation of average number of employees was a novel question, it is not a significant legal issue under ERISA. Finally, the parties have provided no informa-tion on the second factor: Martinez' ability to pay an award. This is of little consequence, since this factor alone will not support an award of attorney fees. *See id.* at 1241. Dodge Printing's motion for attorney fees under ERISA is denied.

Dodge Printing alternatively requests attorney fees against opposing counsel. Under 28 U.S.C. § 1927, "[a]ny attorney ... who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct." This statute authorizes the court to impose attorney fees against an attorney personally "for conduct that, viewed objectively, manifests either intentional or reckless disregard of the attorney's duties to the court." *Braley v. Campbell*, 832 F.2d 1504, 1512 (10th Cir.1987). As noted above, Martinez's position in this litigation was not devoid of merit and it raised a legal issue upon which there is little authority. Accordingly, one cannot conclude that the conduct of counsel in bringing this litigation was in disregard of his duties to the court. The motion for attorney fees under § 1927 is likewise denied.