**Petey JOHNSON, Plaintiff,**

**v.**

**RESERVE LIFE INSURANCE COMPANY, et al., Defendants.**

**No. CV 90–5869 SVW(GHKx).**

United States District Court, C.D. California.

June 5, 1991.

Sanford R. Demain, Van Nuys, Cal., for plaintiff.

David S. McLeod, Jeffrey R. Witham, Dewey Ballantine, Los Angeles, Cal., for defendants.

ORDER GRANTING DEFENDANT MID-
LAND'S MOTION FOR SUMMARY
JUDGMENT RE COBRA CONTINUA-
TION COVERAGE

WILSON, District Judge.

## INTRODUCTION

This case involves an employee who was severely injured and rendered a quadriplegic in a non-work related accident. Plaintiff's employer, defendant Assured Content Restoration ("Assured"), had obtained group medical insurance for its employees through defendant Reserve Life Insurance Co. ("Reserve"). Plaintiff claims that her benefits were wrongfully terminated by the insurer and that she has been wrongfully denied continuation coverage or conversion to an individual policy. The court previously held that the health insurance provided to plaintiff was a plan subject to the Employee Retirement Income Security Act of 1974, Pub.L. No. 93–406, 88 Stat. 832 (codified as amended at 29 U.S.C. section 1001 *et seq.*) ("ERISA"). 761 F.Supp. 93. Also, the court previously granted partial summary judgment to defendant Midland National Life Insurance Co. ("Midland"), successor-in-interest to Reserve, on plaintiff's claims for mandated benefits under California law, finding that the law of Alabama rather than California applied to the extent state law was not preempted by ERISA. The basis for the court's ruling was that the Reserve Insured Trust for Employers ("RITE"), through which Assured's employees received their benefits, was an Alabama multiple employer trust to which the master group insurance policies were issued and delivered. The court reserved its decision as to whether defendant Midland has complied with all of its obligations under ERISA pending further briefing that had been ordered by the court at the hearing on March 25, 1991.

The only question remaining for decision in this case is whether defendant Midland is liable to plaintiff for continuation coverage under ERISA. Specifically, as part of the Consolidated Omnibus Budget Reconciliation Act of 1985, Pub.L. No. 99–272, sec. 10002(a), 100 Stat. 227 (1986) (codified as amended at 29 U.S.C. sections 1161–1168) ("COBRA"), Congress required ERISA plan sponsors to provide terminated employees and or their dependents with the option of purchasing continuation health coverage without regard to insurability. In the present case, the issue for decision is whether the plan under which plaintiff received benefits is exempt from the obligation to provide continuation coverage.

## DISCUSSION

Under the COBRA provisions of ERISA:
*Plans must provide continuation coverage to certain individuals*
*(a) In general*

The plan sponsor of each group health plan shall provide, in accordance with this part, that each qualified beneficiary who would lose coverage under the plan as a result of a qualifying event is entitled, under the plan, to elect, within the election period, continuation coverage under the plan.

*(b) Exception for certain plans*

Subsection (a) of this section shall not apply to any group health plan for any calendar year if all employers maintaining such plan normally employed fewer than 20 employees on a typical business day during the preceding calendar year.

29 U.S.C. sec. 1161. The question presented here is whether the plan at issue is within the exception set forth in section 1161(b). Defendant, relying on a proposed Treasury regulation, 52 Fed.Reg. 22716, 22721–22 (1987), argues that it was not obligated to provide plaintiff with continuation coverage because her employer, defendant Assured, only had twelve employees in the calendar year preceding the termination of plaintiff's coverage. Plaintiff argues that the exception contained in section 1161(b) only applies if all employers maintaining the group health plan pursuant to which plaintiff received benefits employed fewer than twenty employees on a typical business day during the calendar year preceding the termination of plaintiff's benefits. Thus, plaintiff argues that the crucial question is whether any of the other employers participating in RITE had 20 or

more employees, not whether plaintiff's employer did. The court disagrees.

Under *Chevron, U.S.A., Inc. v. Natural Resources Defense Council, Inc.,* 467 U.S. 837, 843–45, 104 S.Ct. 2778, 2782–83, 81 L.Ed.2d 694 (1984), the court must defer to the reasonable interpretation of an administrative agency charged with enforcement of a statutory scheme. In the present case, the COBRA provisions were enacted both as part of the provisions of title 29 of the United States Code encompassing ERISA and as part of the Internal Revenue Code, title 26 of the United States Code. *See* Pub.L. No. 99–272, secs. 10001(a)–(c), 10002(a), 100 Stat. 222–27, 227–31 (1986) (codified at 26 U.S.C. secs. 106(b), 162(i)(2), (k)(1) (repealed and replaced by Pub.L. No. 100–647, sec. 3011(a)–(b)(3), 102 Stat. 3616–25 (1988) (codified as amended at 26 U.S.C. sec. 4980B)) [1] and codified as amended at 29 U.S.C. sec. 1161–1168). Thus, the COBRA provisions are within the administrative jurisdiction of both the Treasury and Labor Departments. *See* 26 U.S.C. secs. 7801, 7805 (providing Secretary of the Treasury with authority to "prescribe all needful rules and regulations for the enforcement of this title"); 29 U.S.C. sec. 1168 (authorizing the Secretary of Labor to prescribe regulations to carry out the COBRA continuation coverage provisions).

While the Secretary of Labor has not issued any regulations regarding the COBRA provisions, the Office of Employee Plans and Exempt Organizations, an office within the Internal Revenue Service which is part of the Department of the Treasury, has issued proposed Treasury regulations interpreting the COBRA provisions. 52 Fed.Reg. 22716 (1987). The proposed regulations, in the form of a preamble and 24 Questions and Answers ("Q & A"), with subparts and illustrations, attempt to answer questions which might arise under the COBRA provisions. While some of the Q & A's have been obviated by Congress' replacement of the deductibility provisions with the excise tax, many of the Q & A's remain relevant to determinations to be made under extant provisions of the tax code.[2]

Specifically, the scope of the exception to the requirement that plans provide continuation coverage remains an issue under the excise tax provision as well as under the substantive ERISA provisions. The proposed regulations interpret the phrase "all employers maintaining such plan," which is

---

**1.** Specifically, under subsequently repealed 26 U.S.C. section 162(i)(2)(A), no deduction would be "allowed under this section for expenses paid or incurred by an employer for any group health plan unless all such plans maintained by such employer" provided continuation coverage. Pub.L. No. 99–272, sec. 10001(a), 100 Stat. 222 (1986). However, in subsequently repealed section 162(i)(2)(B), Congress provided that "[s]ubparagraph (A) shall not apply to any ['group health plan for any calendar year if all employers maintaining such plan normally employed fewer than 20 employees on a typical business day during the preceding calendar year.']" *Id.,* 100 Stat. 223 (incorporating sec. 10001(b), 100 Stat. 223, codified at subsequently repealed 26 U.S.C. section 106(b)(2)(A), made applicable by subsequently repealed section 162(i)(2)(B)). In 1988, Congress repealed the deductibility provision, replacing it with an excise tax on employers and/or plans that fail to provide qualified beneficiaries with continuation coverage. Pub.L. No. 100–647, sec. 3011(a)–(b)(3), 102 Stat. 3616–25 (1988) (codified as amended at 26 U.S.C. sec. 4980B). Congress has maintained the exception such that the excise tax does

not apply to ... any failure of a group health plan to [provide continuation coverage] to any qualified beneficiary if the qualifying event with respect to such beneficiary occurred during the calendar year immediately following a calendar year during which all employers maintaining such plan normally employed fewer than 20 employees on a typical business day.

26 U.S.C. sec. 4980B(d). This change in enforcement mechanisms resulted from a congressional desire to create a sanction that was sensitive to such factors as the number of beneficiaries wrongfully denied continuation coverage, the period of time of the violation, the employer's knowledge of the failure, and whether any attempt had been made to correct the failure. *See* S.Rep. No. 100–445, 100th Cong., 2d Sess., at 479, *reprinted in* 1988 U.S.Code Cong. & Admin.News 4515, 4982.

**2.** While the proposed regulations have not yet been finalized, they reflect the view of the Treasury Department, from the date of issuance, as to how an employer should conduct itself in order to comply with its continuation coverage obligations. *See* 52 Fed.Reg. at 22716–17 (preamble). All of the relevant events at issue here occurred after the issuance of the proposed regulations.

contained in both 29 U.S.C. section 1161(b) and 26 U.S.C. section 4980B(d). Under Q & A 10(d), "[a]n arrangement that constitutes a multiple employer welfare arrangement as defined in section 3(40) of [ERISA, 29 U.S.C. section 1002(40),] is considered a separate group health plan with respect to each employer maintaining the arrangement." 22 Fed.Reg. at 22722.

In the present case, the evidence submitted in support of defendant Midland's motion for summary judgment, filed February 19, 1991, establishes that RITE is a multiple employer welfare arrangement ("MEWA") within the definition of 29 U.S.C. section 1002(40), since it is a plan that provides health care benefits to the employees of two or more employers and was not established pursuant to any collective bargaining agreement. As such, under the proposed regulation, plaintiff's employer would be considered as maintaining a separate plan. Since plaintiff's employer admittedly only had twelve employees in the year preceding the termination and refusal to continue plaintiff's coverage, under the proposed regulation, the plan pursuant to which plaintiff received her benefits was not required to provide her with continuation coverage under the COBRA provisions. *See* 29 U.S.C. sec. 1161; 52 Fed.Reg. at 22721–22 (Q & A 9–10).

The question for the court is whether it must defer to the interpretation contained in the proposed Treasury regulation. First, the court must determine whether the proposed Treasury regulation is applicable to the substantive ERISA question, *i.e.,* whether it is the administrative interpretation of an agency charged with enforcement of a statutory scheme. *See Chevron,* 467 U.S. at 844, 104 S.Ct. at 2782. Second, the court must determine whether the agency's construction of the statute is reasonable. *Id.* "[A] court may not substitute its own construction of a statutory provision for a reasonable interpretation made by the administrator of an agency." *Id.*

■ The answer to the first question is that the Treasury regulation does represent the interpretation of an administrative agency charged with enforcement. The excise tax provision contained in the tax code is one method of enforcing the substantive obligation to provide continuation coverage. The language in the excise tax provision defining the obligation to provide continuation coverage, 26 U.S.C. section 4980B(f)–(g), parallels the language of the substantive ERISA COBRA provisions. 29 U.S.C. secs. 1161(a), 1162–1167. Further, the language exempting certain plans from the application of the excise tax provision, 26 U.S.C. section 4980B(d)(1), parallels the language of the exception contained in the substantive ERISA COBRA provision. 29 U.S.C. sec. 1161(b).[3] Under section 4980B(d), no tax shall apply to a failure of a plan to provide continuation coverage if "all employers maintaining such plan normally employed fewer than 20 employees on a typical business day" during the calendar year immediately preceding the calendar year in which the event that would trigger continuation coverage occurred. Under 29 U.S.C. section 1161(b), the obligation to provide continuation coverage does "not apply to any group health plan for any calendar year if all employers maintaining such plan normally employed fewer than 20 employees on a typical business day during the preceding calendar year." Thus, in order for an employer with fewer than 20 employees to determine whether it is potentially subject to the tax or obligated to provide continuation coverage under ERISA, it must discern what is meant by the phrase "all employers maintaining such plan." The proposed Treasury regulation provides the employer with that meaning. Since the question is the same under both the tax and ERISA provisions, the answer provided by the proposed

---

3. The excise tax provision is nearly identical in its definition of the obligation to provide continuation coverage and the exception thereto to the original deductibility provisions pursuant to which the proposed regulations were initially prescribed. *See* Pub.L. No. 99–272, secs. 10001(a)–(c), 100 Stat. 222–27 (1986) (codified at 26 U.S.C. secs. 106(b), 162(i)(2), (k)(1)) (repealed and replaced by Pub.L. No. 100–647, sec. 3011(a)–(b)(3), 102 Stat. 3616–25 (1988) (codified as amended at 26 U.S.C. sec. 4980B)).

Treasury regulation is applicable to both the tax enforcement and substantive obligation provisions.

Additionally, the legislative history of the COBRA provisions supports the proposition that Congress intended the Treasury Department to issue regulations concerning employers' substantive obligations under ERISA. Specifically, the House Conference Report concerning the COBRA continuation coverage provisions indicates that Congress intended there to be a division of administrative oversight between the Departments of the Treasury, Labor, and Health and Human Services. H.Conf.Rep. No. 99–453, 99th Cong., 1st Sess., at 562–63 (rejected by the House, Dec. 19, 1985). The Treasury Department was to be responsible for coverage and related tax issues while the Department of Labor was to be responsible for promulgating appropriate disclosure and reporting regulations. *Id.*[4] In fact, the conference report refers to "the Treasury regulations defining a plan" in discussing cost issues associated with continuation coverage. *Id.* at 563. While the Conference report was rejected by the House, *see* 131 Cong.Rec. 38359, 38367 (Dec. 19, 1985), the portions of the conference report discussing the COBRA provisions at issue here would appear to express the view of Congress since the continuation coverage provisions were enacted without change from the version submitted in the conference report. *Compare* Pub.L. No. 99–272, secs. 10001–10002, 100 Stat. 222–32 *with* H.Conf.Rep. No. 99–453, at 162–72 (text of H.R. 3128, secs. 10001–10002, submitted in the conference report). Specifically, it would appear that Congress intended the division of labor between administrative arms of the executive department reflected in the conference report. *See* H.Conf.Rep. No. 99–453, at 562–63. The legislative history, therefore, reinforces the court's conclusion that the Department of the Treasury is an administrative agency charged with enforcement and implementation of at least this portion of ERISA. Hence, the court must defer to its interpretation of the phrase contained in both the excise tax and substantive ERISA provision if it is reasonable. *See Chevron,* 467 U.S. at 844, 104 S.Ct. at 2782.

 The interpretation set forth in the proposed regulation is a reasonable one. The provisions at issue speak of "all employers maintaining such plan." 26 U.S.C. sec. 4980B(d)(1); 29 U.S.C. sec. 1161(b). The proposed regulation simply treats each employer in a MEWA as maintaining a separate plan. 52 Fed.Reg. at 22722 (Q & A 10(d)). Thus, such an employer is treated as if it maintained a single employer plan for purposes of determining whether it is obliged to provide its employees with continuation coverage. Since it is the only employer maintaining the "separate" plan, the employer need only count its own employees to determine its obligations under ERISA and its potential liability for the excise tax. On the other hand, a multiemployer plan under 29 U.S.C. section 1002(37)(A), which is a plan contributed to by more than one employer which is maintained pursuant to one or more collective bargaining agreements between one or more employee organizations and more than one employer, is treated as a single plan regardless of how many employers contribute to it. *Cf.* 52 Fed.Reg. at 22722 (Q & A 10(d)) (employers treated as maintaining separate plan only in MEWA's, the definition of which specifically excludes multiemployer plans). Thus, if any of the employers contributing to a multiemployer plan normally have 20 or more employees, the plan must provide continuation coverage and may be liable for an excise tax if it fails to do so. 26 U.S.C. sec. 4980B(a), (f); 29 U.S.C. secs. 1161(a), 1162; *cf.* 52 Fed. Reg. at 22721 (Q & A 9(d)) (discussing how a small (multi)employer plan might lose its exemption). This distinction between multiemployer plans and MEWA's is supported by both the original legislative history of the COBRA continuation coverage provisions and the extant excise tax provisions.

---

4. The Department of Health and Human Services was to issue regulations concerning the continuation coverage requirements imposed on State and local government plans. H.Conf.Rep. No. 99–453, at 563.

Specifically, the excise tax provisions distinguish between multiemployer plans and other plans in terms of who is liable for the tax. Under 26 U.S.C. section 4980B(e)(1)(A)(i), "[i]n the case of a plan other than a multiemployer plan, the employer" is liable for any tax imposed. "In the case of a multiemployer plan, the plan" is liable for any tax imposed. 26 U.S.C. sec. 4980B(e)(1)(A)(ii). In the case of a MEWA, which is not a multiemployer plan, a failure of the plan to provide continuation coverage would result in a penalty to the employer. *See* 26 U.S.C. sec. 4980B(a), (e)(1)(A)(i). Additionally, the employer might also be subject to substantive liability to compensate the qualified beneficiary for failing to provide continuation coverage. *See* 29 U.S.C. secs. 1132(a), 1161(a). Thus, if a MEWA were considered a single plan with many employers contributing to it, rather than a separate plan for each employer, a small employer's potential liability under the excise tax provision as well as for the substantive obligation would depend upon the number of employees normally employed by the other employers that contributed to the MEWA. *See* 26 U.S.C. sec. 4980B(d)(1) ("all employers maintaining such plan"); 29 U.S.C. sec. 1161(b) (same).[5] This result would be especially inequitable where, as in the present case, a small employer provided its health care benefits through an insurance company that grouped employers into MEWA's. In such a case, the small employer might be found liable for continuation coverage and or the excise tax if any of those other employers normally employed 20 or more employees and a qualifying event occurred with regard to one of its employees. On the other hand, in the case of a multiemployer plan, since the plan rather than the employer would be at risk, a small employer that provided its benefits through such a plan would not be subject to the same risks as a MEWA participating employer. *See*

26 U.S.C. sec. 4980B(e)(1)(A)(ii). In light of this potential inequity and the statutory distinction between multiemployer plans and all others, *i.e.*, single employer plans and MEWA's, the Treasury Department's proposed regulation treating MEWA's as separate plans for each participating employer is reasonable.

The reasonableness of the interpretation contained in the proposed Treasury regulation is further reinforced by the legislative history of the COBRA continuation provisions. Specifically, the House Conference Report, in discussing covered employers, notes that "[s]mall employers are those with fewer than 20 employees." H.Conf. Rep. No. 99-453, at 562. Thus, it appears that Congress intended to exempt small employers from the costly obligation of providing their employees with the option of purchasing continuation coverage upon the occurrence of a qualifying event. This goal would not be achieved if a small employer could become liable for continuation coverage on the basis of the employment practices of another employer. Further, since the substantive liability for such coverage would not normally be determined until after the qualifying event occurred, such an employer would probably not have any way of insuring against that eventuality. The legislative history seems to indicate that Congress did not intend such a result. Thus, since the interpretation contained in the proposed Treasury regulation is reasonable, the court must defer to that interpretation. *Chevron*, 467 U.S. at 843–44, 104 S.Ct. at 2781–82; *see Kidder v. H & B Marine, Inc.*, 734 F.Supp. at 729 (relying on the proposed Treasury regulations); *Krogh v. Chamberlain*, 708 F.Supp. 1235 (D.Utah 1989) (same).

## CONCLUSION

Based on the foregoing, the court finds that the proposed Treasury regulation con-

---

**5.** With regard to an employer's possible liability for the substantive obligation to provide continuation coverage, it is not clear whether, in a MEWA, the employer would be the "plan sponsor" for purposes of 29 U.S.C. section 1161(a). 29 U.S.C. section 1002(16)(B)(iii) seems to suggest otherwise since it does not appear to distinguish between multiemployer plans and MEWA's. Of course, if the proposed regulation is followed, each employer in a MEWA is treated as maintaining a separate plan for which it is the plan sponsor under 29 U.S.C. section 1002(16)(B)(i). *See Kidder v. H & B Marine, Inc.*, 734 F.Supp. 724 (E.D.La.1990).

cerning the obligation of small employers to provide continuation coverage is a reasonable interpretation of an administrative agency charged with enforcement and implementation of the COBRA continuation coverage provisions. Thus, the court must defer to its construction of the statutory exception which treats each employer in a MEWA as maintaining a separate plan such that the plan to which an employer contributes on behalf of its employees is not obligated to provide continuation coverage if the employer normally employs fewer than 20 employees. Since plaintiff's employer only had twelve employees on a typical business day during the calendar year preceding the year in which plaintiff's benefits were terminated and she was refused continuation coverage, the plan sponsor was not obligated to offer plaintiff the opportunity to purchase continuation coverage without regard to insurability. Thus, defendant Midland has satisfied all of its obligations to the plaintiff and is entitled to summary judgment. Therefore, the court hereby GRANTS defendant Midland's motion for summary judgment as to the remaining COBRA continuation coverage issue.

IT IS SO ORDERED.