**Bartolo Morales COTTE, et al., Plaintiffs,**

v.

**COOPERATIVA DE AHORRO Y CREDITO YABUCOEÑA, Defendant.**

**No. CIV. 99–1254(JP).**

United States District Court, D. Puerto Rico.

Oct. 21, 1999.

---

154

Artemio Rivera–Rivera, Román Ríos
Torres & Rivera, San Juan, P.R., for
Plaintiff.

Julio L. Castro–Velázquez, Yabucoa,
P.R., Juan A. Santana–Rodríguez, Huma-
cao, P.R., for Defendant.

### *MEMORANDUM AND ORDER*

PIERAS, Senior District Judge.

### I. Introduction

The Court has before it Plaintiffs' Brief
in Compliance with Order **(docket No. 12)**
(on issue of small employer exemption and
administrative exhaustion) and Defen-
dant's Brief in Reply to Plaintiff's Brief on
the "Small Employer Exeption [sic]"
(docket No. 13). In its Initial Scheduling
Conference Order (docket No. 11), the
Court ordered the parties to brief the is-
sues of the small employer exemption to
COBRA and the exhaustion of administra-
tive remedies, defenses which Defendant
had raised at the Initial Scheduling Con-
ference, to determine their application to
the case at bar. In the interests of judicial
efficiency, the Court determined that these
threshold issues would be addressed at an

early stage of the litigation, as a finding for the Defendant on either ground would merit dismissal of the Complaint.

Plaintiffs Bartolo Morales Cotte, Florita Sustache Sustache, wife of Morales, and their minor daughters Lida Mabel Morales Sustache and Lida Glisel Morales Sustache (collectively, "Plaintiffs") filed a Complaint on March 12, 1999, bringing claims under the Employment Retirement Income Security Act ("ERISA"), as amended by the Consolidated Omnibus Budget Reconciliation Act ("COBRA"). *See* 29 U.S.C. § 1001 et seq., 29 U.S.C. § 1161 et seq.

Plaintiff Morales worked for Defendant Cooperativa de Ahorro y Crédito La Yabucoeña ("Cooperativa") as its General Manager from March 1, 1975, until his termination on April 15, 1997. Plaintiffs were participants in Cooperativa's group health plan at the time of Morales' discharge, but neither Morales nor any of the co-Plaintiffs were notified of their rights under COBRA nor of their right to continue receiving benefits from Cooperativa's Group Health Plan, in contravention of 29 U.S.C. § 1166(a). Plaintiffs also contend they were denied the right to elect continued coverage under the group health plan, pursuant to 29 U.S.C. § 1161(a). For the COBRA violations, Plaintiffs seek statutory damages of $110.00 per day of noncompliance, plus interest, costs, and attorneys' fees. Defendant counters that it is exempt from COBRA's notification and continuing coverage requirements by virtue of the "small employer" exemption. Alternatively, Defendant asserts that Plaintiffs failed to exhaust their administrative remedies before bringing the present action and therefore the case is not properly before this Court. The Court will address each of Defendant's contentions in turn.

## II. Discussion

COBRA mandates that employers give former employees the opportunity to continue coverage under the employer's group health plan if a qualifying event occurs. *See* 29 U.S.C. § 1161. Where continuing coverage is provided by the employer, the former employee usually bears the expense, not to exceed 102% of the employer's cost. *See* 29 U.S.C. § 1162(3). The plan administrator must provide notice of COBRA rights to covered employees and their spouses on two separate occasions: (1) at the time of commencement of coverage under the plan, and (2) when a qualifying event occurs. *See* 29 U.S.C. § 1166(a)(1), 1166(a)(4).

Termination of employment, other than by reason of the employee's gross misconduct, is a qualifying event, and requires that the employer notify the administrator of the group health plan within thirty days of the termination. *See* 29 U.S.C. § 1163(2), 1166(a)(1). The plan administrator must then notify the discharged employee and other qualified beneficiaries of their COBRA rights within fourteen days thereafter, and allow them at least 60 days to decide whether to elect to continue their group health plan coverage. *See* 29 U.S.C. § 1165(1), 1166(a)(4), 1166(c), 1167(3)(B). Discharged employees may elect to continue coverage for up to eighteen months following their termination. *See* 29 U.S.C. § 1162(2)(A)(i). Section 502(a)(1)(B) of ERISA empowers participants and beneficiaries to bring a civil action for the recovery of benefits, the enforcement of rights under the terms of the plan, or the clarification of rights to future benefits under the terms of an employee benefit plan. *See* 29 U.S.C. § 1132(a)(1)(B).

### A. Small Employer Exemption

■ The small employer exemption states that COBRA "shall not apply to any group health plan for any calendar year if all employers maintaining such plan normally employed fewer than 20 employees on a typical business day during the preceding calendar year." 29 U.S.C. § 1161(b). If the small employer exemption applies to Defendant, it would not be required to provide Plaintiffs with notice or continuing coverage under the plan.

Defendant argues that it is eligible for the small employer exemption because it employed fewer than twenty employees on a typical day in 1996, the calendar year preceding co-Plaintiff Morales' termination.[1] Plaintiffs dispute Defendant's eligibility by pointing to Defendant's payroll records, which indicate that during two quarters in 1996, Defendant employed twenty or more persons.

In making the determination of Defendant's eligibility for the small employer exemption, Plaintiffs ask the Court to follow *Martinez v. Dodge Printing Centers, Inc.*, 123 B.R. 77 (Bankr.D.Colo.1991). In *Martinez*, the Colorado District Court noted that there is "little guidance from Congress, the administrative agencies or the courts on precisely how to determine whether a business 'normally employed fewer than 20 employees on a typical business day' in order to qualify for the small employer exception." *Id.* at 79. At the time of the *Martinez* decision, only two reported cases even mentioned the small employer exemption, *Kidder v. H & B Marine, Inc.*, 734 F.Supp. 724 (E.D.La. 1990) and *Krogh v. Chamberlain*, 708 F.Supp. 1235 (D.Utah 1989), neither of which provided a methodology for calculating whether a business normally employed fewer than 20 persons on a typical business day. Given the dearth of case law, the only source to which *Martinez* was able to look for guidance in interpreting the statutory provision at issue was the

proposed regulations issued by the U.S. Treasury Department in 1987. *Martinez*, 123 B.R. at 80; *see also Kidder v. H & B Marine, Inc.*, 932 F.2d 347, 353–55 & n. 7 (5th Cir.1991) (applying 1987 proposed Treasury Department regulations in determining eligibility for small employer exemption). Those regulations state that "[a]n employer is considered as having normally employed fewer than 20 employees during a particular calendar year if, and only if, it had fewer than 20 employees on at least 50 percent of its working days that year." 52 Fed.Reg. 22716, 22721 (1987) (to be codified at 26 C.F.R. pt. 1) (proposed June 15, 1987).[2]

Subsequent to *Martinez*, on February 3, 1999, the Treasury Department issued final regulations that will govern group health plans with respect to qualifying events occurring in plan years beginning on or after January 1, 2000. *See* 26 C.F.R. § 54.4980B–1 (1999). Thus, the regulations do not apply to Defendant. For qualifying events occurring in plan years before January 1, 2000, the new regulations require good faith compliance with a reasonable interpretation of the statutory requirements, which is satisfied by compliance with the 1987 proposed regulations. *See id.*; 52 Fed.Reg. 5160, 5161 (Feb. 3, 1999). With respect to the small employer exemption, the new regulations essentially mirror the 1987 proposed regulations, with a minor, non-substantive change in phraseology.[3] The new final regulations also pro-

---

1. Defendant also claims to be exempt from COBRA by virtue of 29 U.S.C. § 1185a(c)(1). That section, however, refers to an exemption from the Mental Health Parity Act, Pub.L. No. 104–204, Title VII, 110 Stat. 2944 (1996), which mandates that a health insurance plan containing no annual or lifetime limit for medical benefits cannot have such limits on mental health benefits. Because Plaintiffs do not claim benefits under the Mental Health Parity Act, Defendant's exemption from that Act is irrelevant to the case.

2. *See Johnson v. Reserve Life Ins. Co.*, 765 F.Supp. 1478, 1480–82 (C.D.Cal.1991) (upholding 1987 proposed regulations under *Chevron*).

3. Under the 1987 proposed regulations, "[a]n employer is considered as having normally employed fewer than 20 employees during a particular calendar year if, and only if, it had fewer than 20 employees on at least 50 percent of its working days that year." 52 Fed. Reg. at 22721. The final regulations specify that the small employer exemption applies to an employer "if, and only if, it had fewer than 20 employees on at least 50 percent of its typical business days during that year." 26 C.F.R. § 54.4980B–2 Q & A 5(e). The change from "working days" to "typical business days" is a change in form, not substance.

vide, as in *Martínez,* that in determining whether the small employer exemption applies, the employer may calculate the number of employees by pay period. *See* 52 Fed.Reg. at 5163. The Court will therefore apply the 1987 proposed regulations and *Martínez* in assessing Defendant's eligibility for the small employer exemption.[4] Thus, to establish its eligibility for the exemption, Defendant has to prove that it employed fewer than 20 persons on 50% of its working days in 1996.

The Defendant in *Martínez* based its calculations on the company's computerized payroll check registers covering each weekly pay period for the year in question, which identified each employee by name. *See Martínez,* 123 B.R. at 80. In conducting its calculation, the Defendant assumed that all persons employed in a given week worked on each day of the pay period. *Id.* It then determined the number of work days in the year, and counted the number of those days in which it employed fewer than 20 persons. *Id.* The court approved of this method of calculating the average number of employees. *Id.* at 82 (calling approach used by Defendant to calculate eligibility for small employer exemption a "straightforward interpretation of the statutory language").

Plaintiffs argue that Defendant's quarterly payroll records show that Defendant normally employed twenty or more persons during two quarters in 1996—the quarter ending on March 31, 1996 ("first quarter") and the quarter ending on December 30, 1996 ("last quarter"). For the first quarter, the payroll records indicate that Defendant had twenty-one persons in its employ. *See* Plaintiffs' Brief in Compliance With Order (on issue of small employer exemption and administrative exhaustion), Exh. 1. These same records reveal that Defendant employed twenty individuals in the last quarter. *See id.* During the second and third quarters of 1996, the payroll records show only 19 persons in Defendant's employ. *See id.* Since Defendant employed twenty or more persons during the first and last quarters in 1996, which translates to 50% of the business days in that year, Plaintiffs argue that Defendant is ineligible for the small employer exemption.

■ Defendant does not dispute that its payroll records list twenty or more individuals for the first and last quarters of 1996. Rather, it first argues that during the first quarter, two of the twenty-one employees listed in the payroll records were secretarial students working just eight hours per week in order to get school credit, and therefore did not constitute "employees" within the meaning of COBRA. Defendant cites no case law to support its contention that the definition of "employee" does not embrace student employees who are on the payroll, albeit temporarily. The 1987 proposed regulations provided that "In determining the number of its employees, an employer shall treat as employees all full-time and part-time employees ..." 52 Fed.Reg. at 22721 Q & A 9(c). In fact, Defendant concedes that "COBRA does not make any distinction between regular, or temporary employees ..." Defendant's Brief in Reply to Plaintiff's Brief on the "Small Employer Exception," at 2. Thus,

4. More significant is the new final regulation's definition of "employee." Whereas under the 1987 proposed regulations, full-time and part-time employees were counted equally as "employees" for purposes of the small employer exemption, *see* Prop. Treas. Reg. § 1.162–26 Q & A 9(c), the new final regulations provide that each part-time employee is counted as a fraction of an employee. *See* 64 Fed.Reg. 5150, 5175 (Feb. 3, 1999). The calculation of part-time employees under the new final regulations is carried out by dividing the actual number of hours worked by the employee in the relevant pay period by the lowest number of hours that a person could work and still be considered a full-time employee (but not more than 40 hours per week). *Id.,* 64 Fed.Reg. at 5163. However, with respect to the determination of Defendant's eligibility for the small employer exemption in 1996, the 1987 proposed regulations, not the new final regulations, will govern the Court's interpretation.

Defendant's first argument falls onto itself.[5]

■ Defendant's second contention is that during the last quarter of 1996, one of the twenty employees listed on the payroll records was substituting another of the listed employees, such that on any given day during the last quarter of 1996, only 19 employees were on the job. Thus, as there were only 19 employees working on a "typical business day" during the last quarter, according to Defendant, they are exempt from COBRA under the small business exemption. The problem with this argument is that it flies in the face of the statutory language. ERISA section 601(b) speaks of the number of individuals *employed* on typical business day, not of the number of employees *on the job* on a typical business day. *See* 29 U.S.C. § 1161(b).

Moreover, Defendant has not brought forth any evidence in support of its contention that it employed fewer than 20 individuals during 50% of the typical business days in 1996. Whereas the Defendant in *Martínez* established its eligibility for the small employer exemption through weekly payroll records, the only evidence in the record as to the number of persons employed by Cooperativa in the year preceding termination is the quarterly payroll records submitted by Plaintiffs. The Court will assume, in the absence of contrary evidence, that all persons listed on the quarterly payroll records were employees on each business day of the quarter. This being the case, the evidence indicates that Defendant did not normally employ fewer than 20 persons on a typical business day in 1996. *See Silver v. I. Goldberg & Partners, Inc.*, Civ. No. 92–6989(MBM), 1994 WL 392187, *3 (S.D.N.Y. Jul. 28, 1994) (requiring definitive evidence of the number of persons employed to establish

eligibility under the small employer exemption). The Court, having ordered the parties to produce briefs and evidence on this issue, finds that as a matter of law Defendant has failed to establish its eligibility for the small employer exemption under COBRA.

## B. Administrative Exhaustion

■ Defendant contends that Plaintiffs are precluded from bringing the instant action because they did not first exhaust administrative remedies. Although ERISA does not expressly require claimants to exhaust administrative remedies before bringing suit in federal court, ERISA section 503 provides that every benefit plan shall establish an administrative review procedure for "any participant whose claim for benefits has been denied . . ." 29 U.S.C. § 1133. From this provision, the courts have read into the statute an exhaustion of administrative remedies requirement, *see Fallick v. Nationwide Mut. Ins. Co.*, 162 F.3d 410, 418 & n. 4 (6th Cir.1998) (listing cases), applied by the courts as a matter of judicial discretion. *See Committee of Blind Vendors v. District of Columbia*, 28 F.3d 130, 134 (D.C.Cir.1994) (stating that when statute does not expressly require exhaustion, "the exhaustion doctrine applies only 'as a matter of judicial discretion'") (quoting *Darby v. Cisneros*, 509 U.S. 137, 153–54 113 S.Ct. 2539, 2548, 125 L.Ed.2d 113 (1993)); *see also McLean Hospital Corp. v. Lasher*, 819 F.Supp. 110, 121–22 (D.Mass. 1993) (discussing public policy underlying ERISA exhaustion doctrine, including preventing premature judicial interference in the decision-making process and reducing frivolous lawsuits).

Plaintiffs do not dispute that they have not exhausted their administrative reme-

---

**5.** Because the secretarial students were part-time employees, under the new final regulations they would be counted as a fraction of an employee and probably would bring Defendant below the 20–employee threshold for that quarter. However, the new final regula-

tions do not govern the dispute at issue. Thus, in accordance with the 1987 proposed regulations, the Court will treat all part-time employees as full "employees" for the purposes of determining Defendant's eligibility for the small employer exemption.

dies. They assert, however, that the administrative exhaustion doctrine does not come into play where, as here, Plaintiffs are claiming a right under the terms of the ERISA statute, not under the terms of the group health plan. Plaintiffs explain that the exhaustion requirement applies only where the matter in contention concerns an interpretation of the terms of the plan ("plan-based" claims) and not the terms of the statute itself ("statute-based" claims). As the dispute in the instant matter falls in the latter category, Plaintiffs contend that the administrative exhaustion doctrine does not bar this action.

The First Circuit has not squarely addressed the issue of whether the exhaustion of internal plan remedies is a prerequisite to bringing suit in federal court on a statute-based ERISA claim. The only First Circuit case to raise this issue, *Drinkwater v. Metropolitan Life Ins. Co.*, 846 F.2d 821 (1st Cir.), *cert. denied,* 488 U.S. 909, 109 S.Ct. 261, 102 L.Ed.2d 249 (1988), was disposed of on the grounds that Drinkwater's claim was plan-based, and thus subject to the exhaustion requirement. *Id.* at 826. The three reported cases that address the precise issue of exhaustion of administrative remedies for claims under ERISA sections 601(a) and 606(a)(4), relating to COBRA notice and continuing coverage, have held that the claimant is not first required to exhaust administrative remedies. *See Mlsna v. Unitel Comm., Inc.,* 41 F.3d 1124, 1130 (7th Cir.1994), *rehearing denied* (1995), *reversing (on other grounds), Mlsna v. Unitel Comm., Inc.,* 825 F.Supp. 862 (N.D.Ill. 1993) (spouse of former employee who was not provided with COBRA notice not required to submit claims for medical expenses to plan); *Rauh v. Coyne,* 744 F.Supp. 1186, 1192 (D.D.C.1990) (administrative appeals procedure "is not triggered until an employee receives notice of the right to continuation of coverage, the employee elects coverage, and then makes a

claim for benefits that is denied"); *Sigurdson v. Southmark–Nat'l Heritage, Inc.,* Civ. A. No. 90–2266–V, 1992 WL 331438, *7 (D.Kan. Nov. 3, 1992) (no administrative exhaustion required for claims involving COBRA coverage and COBRA notice).

Plaintiffs' theory of administrative exhaustion, which distinguishes between plan-based and statutory-based claims, has engendered a split among the circuit courts. It should first be noted, however, that the cases dividing the circuit courts have all concerned ERISA section 510 claims.[6] In the case before the Court, Plaintiff raises a statutory claim under sections 601(a) and 606(a)(4), relating to CO-BRA notice and continuing coverage. The cases addressing section 510 claims, however, have not limited the holding to that provision; on the contrary, the debate has centered around the distinction between plan-based versus statute-based claims, and the rationale employed in those cases is relevant to the issue before the Court.

Of the eight circuits that have taken up the issue, six have held that administrative remedies must be exhausted for plan-based claims, but not where a plaintiff brings suit based on a violation of the terms of the ERISA statute itself. *See Smith v. Sydnor,* 184 F.3d 356, 364–65 (4th Cir.1999); *Chailland v. Brown & Root, Inc.,* 45 F.3d 947 (5th Cir.1995); *Richards v. General Motors Corp.,* 991 F.2d 1227 (6th Cir.1993); *Held v. Manufacturers Hanover Leasing Corp.,* 912 F.2d 1197 (10th Cir.1990); *Zipf v. American Telephone & Telegraph Co.,* 799 F.2d 889, 891–92 (3d Cir.1986), *Amaro v. Continental Can Co.,* 724 F.2d 747, 749–50 (9th Cir. 1984). These courts reasoned that while a plan fiduciary may have expertise in interpreting the terms of the plan itself, statutory interpretation is the province of the judiciary. *See, e.g., Amaro,* 724 F.2d at 751. Furthermore, the courts noted that Section 503 of ERISA, 29 U.S.C. § 1133, the provision relating to internal claims

---

**6.** ERISA section 510 makes it unlawful for any person to interfere with rights protected

under a group health plan or under ERISA. *See* 29 U.S.C. § 1140.

and appeals procedures and from which the exhaustion requirement arose, only refers to procedures regarding claims for benefits. *See, e.g., Zipf,* 799 F.2d at 891. Thus, the majority position holds that where, as here, a plaintiff brings an action under ERISA for a statute-based claim, the plaintiff is not first obligated to pursue administrative remedies before seeking relief in the federal courts.

The minority position is bifurcated. The Eleventh Circuit has held that the exhaustion doctrine applies equally to plan-based and statutory-based claims. *See Mason v. Continental Group, Inc.,* 763 F.2d 1219, 1227 (11th Cir.1985), *cert. denied,* 474 U.S. 1087, 106 S.Ct. 863, 88 L.Ed.2d 902 (1986). The Seventh Circuit, while formerly subscribing to the Eleventh Circuit's absolute approach, *see Kross v. Western Electric Co.,* 701 F.2d 1238 (7th Cir.1983), now holds that district courts have the discretion to require administrative exhaustion of statute-based claims. *See Lindemann v. Mobil Oil Corp.,* 79 F.3d 647, 649–50 (7th Cir.1996). These two circuits reasoned that, regardless of the nature of the ERISA claim, administrative review enables plan administrators to apply their expertise and assemble a factual record that will assist in resolving those claims that are eventually litigated, and further serves to reduce the number of frivolous lawsuits. *See Mason,* 763 F.2d at 1227. As noted above, however, the Seventh Circuit has also held that a plaintiff denied COBRA notice need not first submit claims to the plan's administrative review procedure. *See Mlsna,* 41 F.3d at 1130.

■ After careful consideration, the Court finds the majority view more firmly grounded both as a matter of statutory interpretation and as a matter of judicial policy. The only statutory mandate for requiring claimants to exhaust administrative remedies, ERISA section 503, speaks solely of establishing a procedure for the review of a denial of a claim for benefits under a group health plan (plan-based claims):

In accordance with regulations of the Secretary, every employee benefit plan shall -

(1) provide adequate notice in writing to any participant or beneficiary whose claim for benefits under the plan has been denied, setting forth the specific reasons for such denial, written in matter calculated to be understood by the participant, and

(2) afford a reasonable opportunity to any participant whose claim for benefits has been denied for a full and fair review by the appropriate named fiduciary of the decision denying the claim.

29 U.S.C. § 1133. Thus, there is simply no statutory basis for an administrative exhaustion requirement in the context of statute-based claims. Further, although requiring administrative exhaustion of both plan-based and statute-based claims may have the salutary effect of reducing the number of cases to reach the federal courts, that is simply not sufficient justification for the federal courts to abdicate their duty to adjudicate questions involving the interpretation of federal law in the absence of some statutory directive. The Court therefore adopts the position that the exhaustion of administrative remedies is not required when a plaintiff's claim is based on a statutory violation of ERISA. As it is undisputed that Plaintiffs in the instant case are bringing a statute-based claim, it necessarily follows that, as a matter of law, the exhaustion doctrine does not bar this action.

### III. Conclusion

For the reasons stated above, the Court FINDS as a matter of law that (1) Defendant has failed to establish its eligibility for the small employer exemption, and (2) Plaintiff is not required to exhaust administrative remedies before bringing suit in federal court because Plaintiff seeks to vindicate statute-based rights under ERISA. Thus, the Court hereby **ORDERS** that Defendant is precluded from

raising, in this action, the defenses of the small employer exemption or failure to exhaust administrative remedies.

**IT IS SO ORDERED.**